Merwin MOSKOWITZ, Plaintiff–
Appellant,

v.

TRUSTEES OF PURDUE UNIVERSITY
and Purdue University, Defendants–
Appellees.

No. 93–1349.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1993.

Decided Sept. 22, 1993.

Raymond C. Fay (argued) Hillary L. Pettegrew, Bell, Boyd & Lloyd, Washington, DC, Cheryl M. Knodle, Michael J. Stapleton, Ball, Eggleston, Bumbleburg & McBride, Lafayette, IN, for plaintiff-appellant.

John C. Duffey, Deborah B. Noah, Stuart & Branigin, Lafayette, IN, for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and MANION, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff, Merwin Moskowitz, a tenured professor of biology at Purdue University, was forced to retire in 1991 upon reaching the age of seventy, the age at which the Age Discrimination in Employment Act permits mandatory retirement of professors. He nevertheless filed this suit under the Act, charging that the university had discriminated unlawfully against him on account of his age by denying him research funds and facilities and travel grants before his retirement. These resources, he argues, would have given him post-retirement income and it is that lost post-retirement income that he seeks to recover by this suit. The district judge granted summary judgment for the defendants. The appeal raises important questions concerning the nature of a continuing violation of the age discrimination law and the remedial scope of that law.

Construed as favorably to the plaintiff as reason permits, the record reveals that in

1988, three years before he retired, a dispute arose over the allocation of laboratory space in the biology department at Purdue. Moskowitz agreed to give up a part of his space—all but Room G–127—but returned from his summer vacation to discover that the room was in disarray and unusable as a laboratory. Repeated requests brought the following response from Moskowitz's department head in June 1989: "Don't you think you should retire"? The following month Moskowitz was formally evicted from Room G–127. In the fall, after he complained to the dean of sciences that he was being discriminated against, his department head offered to allow Moskowitz to share Room G–127 with its new occupant, and allocated $3,000 in research funds to him. The room was too small, however, for two people to conduct research in it. After Moskowitz complained to a vice president of the university, Moskowitz's department head told Moskowitz that he should arrange to conduct his research off campus and that he could have another $3,000 in research funds for the coming academic year, his last before his mandatory retirement. He protested that $3,000 was too little, considering that he would have to be doing his research off campus; and in July 1990 his department head promised him an additional $2,000. He decided to use the $8,000 in grants ($3,000 + $2,000 + $3,000—having had no laboratory space, he had not yet spent any of the $3,000 allotted for the just completed academic year) to finance a trip to France to do research there. But in January 1991, as he was about to set off, he discovered that some of the earlier grant of $3,000 had lapsed and could no longer be spent. As a result, he didn't have enough money for the trip, which he therefore had to cancel. In May 1991, the month before his mandatory retirement, he filed a charge of employment discrimination with the EEOC, complaining that he had been denied laboratory space and travel and research funds because of his age and that as a result his opportunity to obtain post-retirement government research grants had been impaired.

 Moskowitz filed the administrative charge more than 180 days (the applicable statute of limitations, 29 U.S.C. § 626(d)(1)) after the university made clear to him in January 1990 through his department head that it would not give him suitable laboratory space. The alleged discrimination in the allocation of laboratory space was complete that month, *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Davidson v. Board of Governors*, 920 F.2d 441, 443–44 (7th Cir.1990), and since Moskowitz also believed that it was a discriminatory act, the statute of limitations began to run then. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450, 453 (7th Cir.1991). It is true that at the same time that Moskowitz's department head made clear that the university would not give him suitable laboratory space, the department head offered him an additional $3,000 in research funds which he could use for laboratory research off campus. Could the offer have been an effort to lull Moskowitz into thinking that he hadn't been discriminated against after all? If so, it failed. Moskowitz regarded the amount as inadequate—and even if adequate for the coming year it could hardly have been thought to compensate him for the deprivation of usable laboratory space for an entire year.

 He appeals to the concept of a continuing violation. This is a rather vague concept and its utility is questionable when there is a statute of limitations administered in accordance with the doctrine of equitable tolling, as the statutes of limitations applicable to the age discrimination law are. *Cada v. Baxter Healthcare Corp., supra,* 920 F.2d at 451. Under the doctrine of equitable tolling, as we explained in *Cada*, a person injured by an unlawful act need not sue until he knows, or through the exercise of reasonable diligence would have known, not only that he has been injured (for once he discovers that, his cause of action has accrued and the statute of limitations begins to run) but also that he has been injured by a possibly wrongful act of the defendant. (The issue in this case of course is not the defendants' identity but whether the possibly wrongful character of their acts was knowable.) If it is only with the benefit of hindsight, after a series of discriminatory acts, that the plaintiff can realize that he is indeed a victim of unlawful discrimination, he can sue in regard

to all of the acts provided he sues promptly after learning their character, even if the statute of limitations has run on all of them. If, however, he knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one. So the fact that a series of discriminatory or otherwise unlawful acts is indeed a series, a continuum, rather than a concatenation of unrelated acts, will delay the deadline for suing with respect to the earliest acts in the series only if their character was not apparent when they were committed but became so when viewed in the light of the later acts.

■ Only in such a case is it proper to describe the acts as adding up to a "continuing violation" that allows the plaintiff to defer suing until the end of the statutory period (the 180 days, or whatever the period of limitations set by the statute is—and it could be extended by equitable tolling or other tolling doctrines) applicable to the last act. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989); *Sabree v. United Brotherhood of Carpenters & Joiners*, 921 F.2d 396, 402 (1st Cir.1990); *Cajigas v. Banco de Ponce*, 741 F.2d 464, 470 (1st Cir.1984) (per curiam); *Glass v. Petro–Tex Chemical Corp.*, 757 F.2d 1554, 1561 (5th Cir.1985). Even in such a case, there is no need for a separate doctrine of continuing violation (multiplication of concepts is the bane of American law), since the result follows directly from the doctrine of equitable tolling. The overlap between the doctrines is noted in *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir.1992).

None of this can help Moskowitz, who by January 1990 knew that he had lost one year's laboratory use and would lose another, tempered only by an inadequate grant, and believed that it was because of his age. He had no excuse for waiting more than 180 days after that before filing a charge in which he complained about the denial of laboratory space. *Id.* at 567; *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549 (11th Cir.1988) (per curiam).

■ That does not dispose of the appeal, however. In January 1991 Moskowitz discovered that he had been short-changed on his research grant. He attributes this cheat to his age, and claims that by preventing him from conducting his planned research in France it has made it harder for him to obtain government research grants during his retirement. There is no doubt that these allegations, in addition to being filed in a timely manner (for remember that he filed his administrative charge in May 1991), identify a potential injury from age discrimination. People often continue working in one way or another after retiring from their main job. Certainly on the basis of the scanty record compiled to date, we have no basis for doubting that Moskowitz might be able to obtain government research grants even though he is retired and, since serious cancer research (Moskowitz is a cancer researcher) is not conducted in home laboratories, would have to make arrangements with some other university or research entity in order to be able to conduct research. And Moskowitz's planned research sojourn in France might for all we know have significantly increased his chance of success in the highly competitive world of grants for scientific research. Obviously the chain of causation that he seeks to build between the university's reneging on a mere portion of a $3,000 research grant and his loss of post-retirement income is tenuous and speculative (and for the further reason that only a portion of any research grant that Moskowitz obtained in his retirement would enure to him as income—much of it would go for lab and other expenses). He might very well be unable to prove any damages with the degree of reliability that the law requires. But it is premature to conclude this. The issue was never examined in the district court. The ground of dismissal was that damages under the age discrimination law are limited to lost earnings and benefits. They are doubled if a willful violation is shown, but twice zero is still zero. Moskowitz incurred no loss of earnings or benefits as a result of the alleged age discrimination. All he lost was post-retirement income; we must decide whether this loss was actionable.

The age discrimination law authorizes the courts to grant "such legal or equitable relief as may be appropriate to effectuate the purposes" of the law. 29 U.S.C. § 626(b). Moskowitz is not seeking equitable relief, such as reinstatement, or "front pay" in lieu of reinstatement when reinstatement is infeasible. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370–72 (7th Cir.1992). He is seeking damages, the standard "legal" (as distinct from equitable) remedy. He claims that the defendants caused him to lose income from other sources. The statutory language that we just quoted is broad enough to encompass a claim for such damages—but only when the language is taken out of its context. For immediately after it the statute says that "legal and equitable relief ... includ[es] ... without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." The mysterious expression—mysterious in a statute concerned with age discrimination rather than with subminimum wages or excessive hours—"amounts deemed to be unpaid minimum wages or unpaid overtime compensation" reflects the fact that the age discrimination law incorporates the remedies and procedures of the Fair Labor Standards Act. Specifically, "amounts owing to a person as a result of a violation of [the age discrimination law] shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of" the remedial provisions of the FLSA. 29 U.S.C. § 626(b). The only "legal" relief specified in the "includ[es] ... without limitation" provision of section 626(b) is an award of "amounts owing to a person as a result of a violation," *Lorillard v. Pons*, 434 U.S. 575, 583 n. 11, 98 S.Ct. 866, 871 n. 11, 55 L.Ed.2d 40 (1978), and the natural way to take this language is as referring to amounts such as wages or benefits that the employer should have given the employee but did not because of the latter's age. That would exclude the consequential damages sought here. Cf. *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 687–88 (7th Cir.1982). Purdue does not "owe" Moskowitz any amount of post-retirement income. The claim is rather that Purdue has interfered with his receipt of such income from other sources.

■ Well, but what about "without limitation"? Although Moskowitz is not asking for the statutorily specified legal relief, the statute seems not to be limited to that form of legal relief. But we think it is. If Congress wanted to grant age discrimination plaintiffs full rights to common law damages, why did it use as its remedial template the Fair Labor Standards Act? The phrase "without limitation" invites courts to be imaginative in the devising of equitable remedies; the invention of front pay is an example. It does not invite the courts to undo the limitations that the Fair Labor Standards Act places on nonequitable relief. If we were to break out of the FLSA framework, as invited by Moskowitz to do, we could not reasonably stop with post-retirement income. Like other forms of tortious conduct, age discrimination can cause psychological distress but the cases hold and we do not understand the plaintiff to disagree that the courts are not authorized to grant such "legal relief" to age discrimination plaintiffs. *Id.* at 687–88; *Haskell v. Kaman Corp.*, 743 F.2d 113, 120–21 and n. 2 (2d Cir.1984), and cases cited there. These cases show that "without limitation" is not to be taken literally when the issue is whether to award legal relief that is novel by the standards of the Fair Labor Standards Act. We do not see how these cases can be distinguished from our case.

An exception to the narrow construal of "legal relief" has been recognized for the case in which the plaintiff charges that he was retaliated against for exercising his rights under the age discrimination law. 29 U.S.C. § 623(d); see *Passer v. American Chemical Society*, 935 F.2d 322, 330–31 (D.C.Cir.1991). In *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir.1990), we treated this provision as creating a tort for which the usual common law damages can be obtained. See also *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543, 551 (7th Cir.1991). These cases do not cite *Pfeiffer* or the other decisions which hold that common law damages are not available in suits under the age discrimination law. The tension between the

two lines of cases is, however, superficial. *Travis* and *Soto* rely on a specific amendment to the provision of the Fair Labor Standards Act regarding retaliation, an amendment that appears to make clear that Congress meant to enlarge the remedies available for such misconduct beyond those standardly available for FLSA (and ADEA) violations.

An award of post-retirement income might seem analogous to front pay, and thus "equitable," and thus recoverable without regard to the provision on legal relief. But there is a big difference between front pay and post-retirement income. In the former case the plaintiff would be entitled to reinstatement, an equitable remedy, and is given front pay in lieu of it because reinstatement simply isn't feasible, perhaps as a result of the friction generated by the discharge of the plaintiff and the ensuing litigation. *Price v. Marshall Erdmann & Associates, Inc.*, 966 F.2d 320, 325 (7th Cir.1992). The "in lieu" remedy is deemed equitable too. But Moskowitz has no right—equitable, legal, or otherwise—to reinstatement. He admits that he was lawfully compelled to retire. The post-retirement income he seeks is not in lieu of continued employment with Purdue.

*Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1446 (11th Cir.1985), on which Moskowitz relies heavily, is distinguishable. The plaintiff was a salesman. His employer decided to withdraw certain accounts from him but to compensate him by allowing him to sell certain noncompeting lines, using the employer's line as a "headliner" that would attract customers to the noncompeting lines. When he was fired, allegedly in violation of the age discrimination law, he lost some of his income from these noncompeting lines, and the court deemed that income a job-related benefit the monetary value of which he could recover in his age discrimination suit. Although the benefit came from third parties, not from the employer, the opportunity to obtain the benefit was created by the employment contract, much as when an employment contract entitles an employee to retain a share of the patent royalties that his work for his employer generates. Moskowitz's contract with Purdue did not entitle him to post-retirement income from research grantors.

Turning from post-retirement income to the travel and research money, we can imagine though we need not attempt to evaluate an argument that this money was a fringe benefit to which Moskowitz was entitled, just like health or life insurance; and there is no doubt that a suit for fringe benefits denied on account of an employee's age is within the remedial scope of the age discrimination law. *Kossman v. Calumet County*, 849 F.2d 1027, 1032 (7th Cir.1988). And in fact part of the damages that Moskowitz seeks are almost $7,000 in what he describes as travel expenses. Apparently this is the amount that he could have used for the trip to France after losing a portion of the original $8,000 in grants, but it was not enough money to finance the trip so he didn't take the money and now he wants it. This raises the interesting question of how to value a fringe benefit for purposes of a suit for monetary relief under the age discrimination law, *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 373–75 (3d Cir.1987); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 965 (4th Cir.1985); *Whittlesey v. Union Carbide Corp.*, 35 FEPC 1085 (S.D.N.Y.1983), aff'd, 742 F.2d 724 (2d Cir.1984), since the amount of a fringe benefit and its actual value to the employee need not coincide. We need not discuss that question. Whatever claim Moskowitz may have had for the recovery of the $7,000 (but why not the full $8,000?) he has abandoned in this court. He goes out of his way to describe the travel money as a "nonfringe" benefit (because some fringe-benefit discriminations are exempt from the age discrimination law, see 29 U.S.C. § 623(f)(2); *Bell v. Purdue University*, 975 F.2d 422, 426–29 (7th Cir. 1992)) and to make clear that he is seeking damages for "lost grant opportunities," not for a lost benefit of his employment. He is seeking in other words consequential damages, to which the age discrimination law does not entitle its beneficiaries unless retaliation for the exercise of rights granted by the law is charged.

Affirmed.