UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT K. EMMERT,
Plaintiff-Appellant,

v.

No. 98-2027

MARVIN RUNYON, Postmaster
General, U.S. Postal Service,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-95-2839)

Submitted: March 2, 1999

Decided: April 29, 1999

Before ERVIN and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mindy Gae Farber, Lori Elizabeth Kline, JACOBS, JACOBS & FAR-
BER, Rockville, Maryland, for Appellant. Lynne A. Battaglia, United
States Attorney, Donna C. Sanger, Assistant United States Attorney,
Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Robert K. Emmert appeals from the district court's order granting the Defendant, Marvin Runyon, Postmaster General of the United States Postal Service (USPS), summary judgment and dismissing his employment discrimination complaint. Because Emmert did not exhaust his administrative remedies in a timely manner, the district court correctly dismissed his complaint. Therefore, we affirm.

Emmert began working for USPS in 1980. In April 1986, Emmert injured his shoulder while on the job, and USPS refused to place him in a position with minimal lifting. Because of his injury, Emmert missed work. However, in 1988 the USPS offered a partial accommodation to Emmert by assigning him to the "flat sorting machine." He was still required to perform in a position which required him to stand for eight-hour periods, sorting and casing bundles of large envelopes. By 1989, he began to experience a degenerative disease in his knee, which he alleges required accommodation that the USPS refused to provide (such as a chair to sit on at breaks or a nearby place to store his belongings). He further contends that he often was unable to attend work due to severe knee pain and USPS's failure to provide accommodation. In early 1990, he filed a worker's compensation claim asserting that he had injured his knee on the job. Emmert's frequent absences from work caused the USPS to issue him numerous warnings and suspensions. In December 1991, Emmert filed a complaint with the Equal Employment Opportunity Commission (EEOC) contending that the USPS had failed to provide him with a reasonable accommodation for a degenerative disease in his knee. The final agency decision, closing the claim with a finding of no discrimination based on physical handicap, was issued on June 23, 1992. Emmert did not appeal this EEOC decision.

Emmert continued to be frequently absent from work. On September 25, 1992, the USPS issued him a notice that he would be removed

2

in thirty days for failure to meet the attendance requirements of his position. Emmert did not file an EEOC complaint, but he did file a union grievance, which resulted in a resolution between the USPS and Emmert in November 1992. Under the resolution, the USPS agreed to hold the September 25 notice of removal in abeyance for one year. Emmert was required to submit a doctor's certificate for every absence due to illness, report for work on a regular basis, and satisfactorily perform all of his duties. Furthermore, the resolution provided that if Emmert failed to fulfill his obligations under the agreement, action would be initiated immediately to remove him from the USPS; if Emmert's attendance was acceptable at the end of twelve months, the record of the matter would be removed from his personnel file.

During the ensuing year, Emmert continued to be frequently absent from work. His requests for leave due to knee pain were denied. On September 22, 1993, the USPS issued Emmert a second removal notice, again citing excessive absences as the basis for the removal. Emmert filed an EEOC complaint on October 22, 1993, claiming that he had a physical handicap, which was not being accommodated by the USPS. He also filed a union grievance, which resulted in a resolution between the USPS and Emmert in October 1993, holding the September 22 notice of removal in abeyance for six months pending a settlement with the Department of Labor and stating that a denial of his Department of Labor claim would be sufficient cause for reinstatement of the removal. The USPS issued Emmert his final notice of removal on February 22, 1994, and his termination was effective in March 1994. The EEOC issued a right to sue letter on June 24, 1995, after denying his claim.

Emmert filed this action on September 22, 1995. His amended complaint alleges that USPS discriminated against him in the terms and conditions of employment when it failed to accommodate his disability and terminated his employment without first offering him accommodations so that he could be regular in attendance under Title VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(b) (1994)), and the Family and Medical Leave Act (29 U.S.C. §§ 2601-2654 (1994) (FMLA)). The district court denied the USPS's initial motion to dismiss or for summary judgment. The USPS subsequently renewed its motion for summary judgment. The district judge granted summary judgment to the USPS

on Emmert's FMLA claims as to absences from work which occurred before February 5, 1994. Further, the court granted partial summary judgment to the USPS on Emmert's claims of discrimination, ruling that all claims involving conduct which occurred prior to June 23, 1992, were time barred. Finally, the court deferred ruling on the USPS's contention that Emmert's post June 23, 1992, claims were also time-barred. Emmert voluntarily dismissed his Title VII and FMLA claims.

The remaining claims were referred to a magistrate judge pursuant to 28 U.S.C. § 636(b) (1994), with the consent of the parties. The magistrate judge found that all of Emmert's remaining claims occurring after June 23, 1992, were time-barred because he failed to exhaust his administrative remedies in a timely fashion. The magistrate also held that no finder of fact could reasonably conclude that Emmert's excessive absences from work were caused by USPS's refusal to accommodate his disability. Emmert timely appeals.

On appeal, Emmert claims that the district court erred in determining that: (1) his disability discrimination claims accrued on September 25, 1992 (the date of the first notice of removal); (2) the equitable doctrines of continuing violation and equitable tolling were inapplicable to his disability claim; and (3) no fact finder could conclude that his absences were attributable to the USPS's refusal to accommodate his disability.

We review the grant of summary judgment de novo. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Summary judgment is appropriate if the pleadings and evidence of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

A federal employee seeking to file an action based on the Rehabilitation Act must first exhaust his administrative remedies promulgated pursuant to Title VII and set forth in EEOC regulations. See 29 U.S.C. § 794(a); 42 U.S.C.A. § 2000e-16 (West 1994 & Supp. 1998); 29 C.F.R. § 1614.105(a)(1) (1998); Doe v. Garrett, 903 F.2d 1455, 1458-

4

62 (11th Cir. 1990) (the administrative requirements under the Reha-bilitation Act must be satisfied in the same manner as under Title VII). Under these regulations, an aggrieved federal employee must make contact with an EEOC counselor within forty-five days of the alleged discriminatory act or, in the case of personnel action, within forty-five days of the effective date of that action. See 29 C.F.R. § 1614.105(a)(1). A district court must dismiss an employment dis-crimination claim if the plaintiff fails to seek EEOC counseling within the prescribed time period. See Zografov v. V.A. Medical Ctr., 779 F.2d 967, 968-70 (4th Cir. 1985) (Title VII). The administrative filing period commences with the date of the alleged unlawful employment practice. See Delaware State College v. Ricks , 449 U.S. 250, 258-62 (1980).

In Ricks, the plaintiff was a college professor who learned in March 1974 that the board of trustees of the college had voted to deny him tenure. He immediately filed a grievance with the college. On June 26, 1974, during the pendency of the grievance, the board of trustees offered Ricks a one year "terminal" contract, which expired on June 30, 1975. The college rejected Rick's grievance in September 1974. On April 4, 1975, Ricks filed a charge with the EEOC alleging that the denial of tenure was discriminatory. The Supreme Court held that the only alleged discriminatory conduct occurred, and thus the admin-istrative filing period commenced, when the tenure decision was made and communicated to Ricks. See id. at 258. The Supreme Court found that the limitations period began to run by June 26, 1974, when the college notified Ricks that he would be offered a terminal con-tract. See id. at 261-62. The Court reasoned that this was the date that the college had established its official position and made that position apparent to Ricks. See id. at 262. The Court rejected the Third Cir-cuit's reasoning that the initial decision to terminate an employee may be reversed and the aggrieved employee therefore should not be expected to resort to litigation until termination actually has occurred. See id. at 255-56. The Court stated that the proper inquiry is determin-ing the date of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. See id. at 258. The Court reasoned that Ricks's termination was the inevitable conse-quence of the earlier denial of tenure. See id.  at 257-58. In this case, the district court found that, in September 1992, the USPS made and notified Emmert of its decision to terminate him; further, the court

5

found that this notice was the alleged discriminatory act which commenced the running of the filing period.

Emmert's claim under the Rehabilitation Act is that he was unable to meet his job's attendance requirements because the USPS failed to accommodate his disability. He states that he started requesting accommodation of his disability in 1990. Therefore, he should have initiated contact with an EEO counselor within forty-five days of the first date his request was denied for allegedly discriminatory reasons. In any event, the USPS's first personnel action occurred on September 25, 1992, when it issued Emmert his first notice of removal. Thus, as the district court found, the issuance of the notice of removal commenced the administrative filing period. Because he failed to file within forty-five days of that notice, Emmert failed to timely exhaust his administrative remedies.

Emmert claims that the September 25, 1992, notice of removal was revoked when he entered into an agreement with management.* In essence, Emmert claims that the September 25, 1992, notice of removal could not trigger the running of the limitations period because it was not sufficiently final and unequivocal. Emmert further argues that the November 1992 resolution did not provide any more finality than the "rescinded" notice of removal and only notified him that some further action regarding his employment status may be taken at some future date based on his future performance. Thus, Emmert contends, the USPS's position regarding his employment remained tentative. Emmert asserts that his claim did not accrue until September 23, 1993, when he received a second notice of removal. He contends that it was at this time that the USPS stated unequivocally that it would not accommodate his disability and that he filed an EEOC complaint within forty-five days of that date.

Emmert's characterization of the November 1992 resolution with management is misleading. The resolution did not rescind the September 25 notice of removal. Rather, the resolution held the notice of

_____

*He also alleges that further acts of discrimination occurred between the September 25, 1992, notice of removal and his discharge so that at the time of his administrative filing a "present violation exist[ed]." However, he does not specify the nature of the further discriminatory acts.

6

removal in abeyance for one year. The resolution further stated that if Emmert had acceptable attendance at the end of twelve months the action would be removed from his personnel file. However, the USPS had established its official position regarding Emmert's absenteeism and made that position apparent to Emmert, no later than November 1992. See id. at 262. Thus, Emmert's limitations period commenced no later than November 1992.

The Supreme Court has held, however, that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted). Emmert argues that the disability discrimination of which he complains continued up until his termination and thus qualifies as a "continuing violation." Under the continuing violation theory, if an actual violation has occurred within the requisite time period and the untimely claims can be related to the timely incident, all the claims may be considered as timely. See Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997). However, mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. See Ricks, 449 U.S. at 257.

This Circuit has never delineated what constitutes a"continuing violation." Our sister circuits, however, have developed a number of tests for determining whether a claimant was suffering from a continuing violation. See, e.g., DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997) (finding continuing violation in case in which violation is systemic or serial); Malhotra v. Cotter & Co. , 885 F.2d 1305, 1310 (7th Cir. 1989) (finding continuing violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); Berry v. Board of Supervisors , 715 F.2d 971, 981 (5th Cir. 1983) (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts, and degree of permanence of acts is satisfied).

Emmert fails to establish a continuing violation under any of these tests. As the Supreme Court has stated, the "critical question" in a continuing violation case is "whether any present violation exists."

7

United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). Events that simply constitute the inevitable consequences of an earlier, allegedly discriminatory decision do not suffice to create a continuing violation, see Ricks, 449 U.S. at 257-58, nor do "separate and completed events," Lawson v. Burlington Indus., Inc. , 683 F.2d 862, 863-64 (4th Cir. 1982). Emmert has not established a present violation, because after June 23, 1992, he requested only that his absences be excused, but he did not request any accommodation of his disability.

Furthermore, if Emmert intended to complain of a discriminatory discharge, he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment. See Ricks, 449 U.S. at 257. Although Emmert alleges an "on-going practice to discriminate against him on the basis of his disability" up until his termination, the record reveals that the USPS's alleged failure to accommodate him was based on individual, sporadic decisions of various supervisors, not a policy or practice of discrimination. In fact, Emmert's amended complaint does not clearly allege a policy or practice of discrimination. As Emmert explained, a number of supervisors rotated through his section. On occasion, Emmert asked a supervisor for a chair so that he could alleviate the pain caused by having his weight on his knee. Emmert stated that two supervisors, who were only temporarily assigned to him, did not fulfill his requests. Also, after June 23, 1992, Emmert requested only that his absences be excused but he did not request any other accommodation of his disability. Thus, he has not established a continuing violation.

A plaintiff who knows or with the exercise of reasonable diligence would have known after each act that the act was discriminatory and had harmed him may not sue on all the discriminatory acts within the statutory period applicable to the last one. See Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 282 (7th Cir. 1993). A series of discriminatory acts will delay the deadline for suing with respect to the earliest acts in the series only if their character was not apparent when they were committed but became so when viewed in the light of the later acts. See id. Here, Emmert knew or with the exercise of due diligence would have known that he was being discriminated against by the USPS's alleged failure to accommodate his disability long before

8

1993. Emmert should have known as early as 1990 that the denial of his requests for accommodation constituted disability discrimination.

Lastly, Emmert claims that even if he did not allege a continuing violation and that his claim accrued on September 25, 1992, he is entitled to equitable tolling of the filing period. The doctrine of equitable estoppel may excuse a plaintiff's untimely filing when the employer has engaged in some type of misconduct or when plaintiff filed a defective pleading during the statutory period. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). Emmert contends that the USPS's failure to enforce the September 25, 1992, notice of removal caused him to forbear filing an EEOC charge. However, Emmert does not argue that he was entitled to any accommodation as of June 23, 1992, and after that time, he never advised the USPS that he needed any accommodation. In fact, Emmert sought no accommodation other than being excused from attendance. As the district court noted, although the USPS ultimately agreed to hold the termination in abeyance, that agreement was in exchange for Emmert's own agreement to report for duty on a regular basis, and he agreed that he would be terminated if he did not do so. Thus, far from seeking accommodation, he expressly undertook to meet his job's attendance requirements under existing work conditions. There was no misconduct by the USPS.

Because Emmert failed to timely exhaust his administrative remedies, we affirm the district court's order granting summary judgment to the Defendant. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9