**OVERSEAS INNS S.A. P.A.,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 89–1691.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1990.

Rehearing Denied Oct. 22, 1990.

Jack Pew, Jr., William D. Jordan, Jackson & Walker, Dallas, Tex., for plaintiff-appellant.

Joan Oppenheimer, Gary R. Allen, Chief, David English Cormack, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for defendant-appellee.

Before THORNBERRY, GEE, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Overseas Inns S.A. P.A. (Overseas), seeks to recover income taxes assessed and collected by the IRS, primarily contending that comity should be extended to a Luxembourg court approved plan of reorganization which treated the IRS as a general, rather than a priority, creditor. The district court declined to do so and granted the United States summary judgment. Finding no error, we AFFIRM.

### I.

The parties stipulated in district court to the facts. Overseas, a Luxembourg corporation, is the successor to a foreign corporation which failed to file United States tax returns for the years 1960 through 1962. The IRS contended that Overseas' predecessor had engaged in trade or business in the United States during those years and had derived income from United States sources. In 1973, Overseas filed the returns for the years in question but asserted that its predecessor did not owe any taxes. The IRS disagreed and issued a notice of deficiency for those years.

Overseas challenged the deficiency in the United States Tax Court. Overseas and the IRS compromised the deficiency determination; and in January 1978, the tax court entered a deficiency judgment for income taxes for 1960, 1961, and 1962 in the respective amounts of $103,358.43, $206,811.36 and $197,174.04, not including interest.

While the Tax Court proceeding was pending, Overseas filed for bankruptcy in December 1976, in Luxembourg. In March 1978, the Luxembourg court-appointed commissaires proposed a plan of reorganization (the plan), because a financial group was willing to invest enough capital to pay Overseas' sole secured creditor in full and the general unsecured creditors in part. Under the plan, the unsecured creditors would receive 23.49% of their claims. The plan characterized the IRS as an unsecured creditor; therefore, the IRS would receive only $231,475.[1] The IRS would have been a priority creditor in a similar proceeding in the United States.

The IRS received a copy of the plan; but its policy was not to participate in such foreign bankruptcy proceedings, because it usually received less than the amount owed. It did not enter an appearance in the Luxembourg proceeding, file a proof of claim or object to the plan. The Luxembourg court approved the plan; and it became final in February 1979. When Overseas mailed the first check to the IRS under the plan, the IRS returned it, because it was in Belgium francs, not United States dollars. Overseas' yearly payments under the plan to the IRS in 1979–1983, totaling $179,135.76, were accepted.[2]

In June 1981, Overseas agreed to sell 19% of its Eagle International stock to New Trails, Inc., a United States corporation. At the time of the bankruptcy, the stock had no market value. New Trails paid part of the purchase price, with the balance to be paid in installments. In 1983 and 1984, the IRS levied on the payments for application against Overseas' tax liability in issue; and consequently, New Trails made the installment payments of $247,605.48, $236,-295.89, and $223,868.85 directly to the IRS. The IRS denied Overseas' timely claims for refund of the levied payments.

In November 1986, Overseas brought this action, contending that the IRS had collected $919,835.79 to which it was not entitled. Overseas moved for summary

---

**1.** As of that date, the deficiency was $1,003,-724.61, consisting of $507,343.83 in taxes and $496,380.78 in interest.

**2.** Overseas' payment in 1984 was placed in escrow.

judgment, asserting that the Luxembourg judgment was binding on the IRS and that it had satisfied its obligation to the United States by paying $179,135.76 in accordance with that judgment. The district court denied the motion, holding that Overseas had failed to prove that the IRS would have received comparable treatment under United States law. *Overseas Inns S.A. P.A. v. United States*, 685 F.Supp. 968, 975 (N.D. Tex.1988).[3]

The government moved for summary judgment in December 1988. Several months later, Overseas moved to amend its complaint to allege that the IRS had failed to provide the required notice of intent to levy and post-seizure notice. The motion was denied.

In May 1989, the district court granted the government summary judgment, holding that the IRS would not have received comparable treatment in similar proceedings in the United States and that the IRS's acceptance of Overseas' checks did not constitute consent to the Luxembourg decree. Overseas timely appealed.

## II.

Overseas contends that the district court erred in granting summary judgment because (1) comity should be accorded the Luxembourg plan; and (2) alternatively, the IRS accepted the Luxembourg judgment by knowingly accepting its benefits. Overseas also contends that the district court erred by denying Overseas leave to amend its complaint.

## A.

A district court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We apply the same standard, *de novo*, on appeal. *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1015–16 (5th Cir.1990). As stated, there is no genuine issue as to any material fact; the facts were stipulated.

### 1.

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir. 1971) *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Id.* The Supreme Court, in *Hilton v. Guyot*, 159 U.S. 113, 205–06, 16 S.Ct. 139, 159–60, 40 L.Ed. 95 (1895), enunciated the standard for extending comity:

When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens ... and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, ... the judgment is prima facie evidence, ... of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.[4]

---

**3.** The court noted that Overseas had $22.5 million in assets at the time of the reorganization and that the IRS, as a first or even fourth priority claimant, could have collected approximately $1 million. 685 F.Supp. at 975.

**4.** The government asserts that the standard of review is abuse of discretion, but the cases cited are inapposite. *See, e.g., Remington Rand Corp.*

*v. Business Systems, Inc.*, 830 F.2d 1260, 1266 (3rd Cir.1987) (abuse of discretion standard applied in reviewing trial court's decision on the merits). Here, the district court declined to extend comity on a motion for summary judgment; and we review appeals from summary judgment on a *de novo* basis. Therefore, although for our purposes it is not necessary to

Granting comity to a foreign bankruptcy proceeding may enable the debtor's assets to be disbursed in an "equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 458 (2d Cir.1985). "Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Id.*

Accordingly, comity is more likely to be accorded foreign bankruptcy decrees when the foreign law is comparable to United States law. *See, e.g., Cunard S.S. Co.*, 773 F.2d at 459 ("principles of Swedish bankruptcy law are not dissimilar to those of our Bankruptcy Code").[5] Concomitantly, American courts have declined to accord comity to such decrees when it would prejudice American interests or policies. *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 & n. 104 (D.C.Cir.1984) ("authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act"); *see also, Hilton*, 159 U.S. at 205–06, 16 S.Ct. at 159; *Cunard S.S. Co.*, 773 F.2d at 459 ("comity would not be granted if it would result in prejudice to United States citizens"); *Banque de Financement, S.A. v. First Nat'l Bank of Boston*, 568 F.2d 911, 921 (2d Cir.1977) ("[i]n exercising its discretion the district court is to guard against forcing American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country's policy of equality").

As noted by the district court in denying Overseas' summary judgment motion, "[i]t is beyond peradventure that there is, in the United States, an inexpugnable public policy that favors payment of lawfully owed federal income taxes." *Overseas Inns S.A. P.A.*, 685 F.Supp. at 972. This strong public policy applies to taxpayers in bankruptcy. *See* H.R. Conf. Rep. No. 841, 99th Cong. 2d Sess. II–777, *reprinted in* 1986 U.S.Code Cong. & Ad. News 4075, 4865; *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 1, 13–15, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5799, 5799–5801.[6] Comity does not reach so far as to allow one country to adversely affect another's tax revenues. Under the plan, the IRS was treated as an unsecured creditor. In contrast, under United States bankruptcy law, the IRS was a secured creditor and had priority status. Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (repealed by the Bankruptcy Code which took effect October 1, 1979). The Luxembourg judgment, therefore, unfairly prejudices the United States.

---

decide the issue, whether to grant comity appears to be a mixed question of law and fact, in accordance with the above quoted standard in *Hilton v. Guyot*. *See also, Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d at 440–41, also quoted above.

5. "[T]ransnational insolvency cases have been rarely submitted for formal adjudication in U.S. courts [and] the law in this complex field remains underdeveloped and inconsistent at best." Morales & Deutcsh, Bankruptcy Code Section 304 and U.S. Recognition of Foreign Bankruptcies: The Tyranny of Comity, 39 Bus.Law. 1573, 1575 (1984). Recognition of foreign bankruptcy decisions is based on one of two doctrines. Some consider the "universality" theory the modern trend in recognizing foreign bankruptcy proceedings. Gitlin & Flaschen, The International Void in the Law of Multinational Bankruptcies, 42 Bus.Law. 307, 309 (1987). This subjects all of the debtor's assets to the jurisdiction of the bankruptcy court and is a movement away from the old "territorial" approach, which held that bankruptcy proceedings had no power

beyond the borders of the country which granted the decree. *Id.*

6. "In a broad sense, the goals of rehabilitating debtors and giving equal treatment to private voluntary creditors must be balanced with the interests of governmental tax authorities who, if unpaid taxes exist, are also creditors in the proceeding. Since tax authorities are creditors of practically every taxpayer, another important element is that tax collection rules for bankruptcy cases have a direct impact on the integrity of the Federal, State and local tax systems. These tax systems, generally based on voluntary assessment, work[ ] to the extent that the majority of taxpayers think they are fair. This presumption of fairness is an asset which should be protected and not jeopardized by permitting taxpayers to use bankruptcy as a means of improperly avoiding their tax debts. To the extent that debtors in a bankruptcy are freed from paying their tax liabilities, the burden of making up the revenues thus lost must be shifted to other taxpayers." S.Rep. No. 989, 1978 U.S.Code Cong. & Ad.News at 5799–5800.

**1150**

Moreover, not only is the Luxembourg judgment inconsistent with United States laws and policies; but also, because Overseas' predecessor availed itself of the benefits of the United States business climate, it should not now be allowed to escape the corresponding tax burden. Luxembourg's law is dissimilar and prejudicial. The district court held properly that comity should not be accorded.

### 2.

As an alternative to comity being accorded, Overseas contends that because the IRS knowingly accepted the benefits of the Luxembourg judgment, it is bound by that judgment. The district court held that the IRS' acceptance did not estop the IRS from seeking to collect the balance of the tax liability. *See, e.g., Botany Worsted Mills v. United States,* 278 U.S. 282, 288–89, 49 S.Ct. 129, 131, 73 L.Ed. 379 (1929). In its Reply Brief and at oral argument, Overseas stated that it is not relying on estoppel.

In addition, the district court noted that Congress has mandated by statute, 26 U.S.C. § 7122, the exclusive method for compromising tax liability. No offer in compromise was submitted or accepted, as required by the statute and regulations. *See* Treas.Reg. § 301.7122–1. Overseas admits both that the procedures of § 7122 were not followed and that those procedures control in the case of a compromise.

Instead, Overseas bases error on the argument that the acceptance was "an acquiescence in a judgment," not a "compromise," and that therefore, section 7122 does not control. It contends that the IRS acquiesced by failing to challenge the plan and by accepting payments which the IRS knew were made pursuant to the plan; that when one accepts the benefits of a judgment, one also accepts its burdens.

■ This argument is without merit. Overseas owed a fixed amount to the IRS and attempted to satisfy that amount by repaying only 23.49% of it. This, therefore, is an attempted compromise, seeking to reduce the amount of taxes owed. Accord-ingly, the exclusive statutory procedure would apply.

For example, an oral agreement between the IRS and the taxpayer was held to be an attempted compromise in *Botany Worsted Mills,* 278 U.S. at 288–89, 49 S.Ct. at 131. In rejecting the argument that the agreement bound the Government, even though the statutory formalities had not been complied with, the Supreme Court stated:

> We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office.

*Id.*

Therefore, the IRS' acceptance of Overseas' checks did not preclude it from seeking full recovery.

### B.

Overseas contends that the district court erred in not allowing it to amend its complaint to allege that the IRS had failed to provide the required notice of intent to levy and post-seizure notice. After service of a responsive pleading, a party may amend his complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

■ Whether such an amendment should be granted is within the district judge's discretion, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 121 (5th Cir.1982); and the ruling is reversible only for abuse of that discretion. *Union Planters Nat. Leasing,* 687 F.2d at 121; *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981). In exercising its discretion, the district court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc...." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

Here, the district court noted:

This case is unlike the usual one in which leave to amend is freely to be given. Extensive prelawsuit and pretrial proceedings have taken place. More importantly, the government has already filed a summary judgment motion based on the current pleadings. To grant Overseas leave to amend is potentially to undermine the government's right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. The summary judgment procedure has built-in protections against premature judgments. A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint.

The court noted that Overseas commenced this action in November 1986, and did not seek to amend until March 1989, some two and a half years later.

Furthermore, in the interim, Overseas moved in 1987 for summary judgment. Accordingly, that motion represented "that the case was fully at issue, that all theories of liability and all defenses had been presented, and that the case was ripe for summary treatment." *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.), *reh'g granted cause remanded on other grounds*, 625 F.2d 1226 (1980) (motion to amend denied because filed nine months after a motion for summary judgment).

It was not an abuse of discretion for the district court to deny the motion.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.