Mark E. BROUSSARD, Jr., Plaintiff,

v.

ORYX ENERGY COMPANY, Defendant.

No. CIV.A. 1:00–CV–28.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 29, 2000.

**MEMORANDUM OPINION
AND ORDER**

HEARTFIELD, District Judge.

Before the Court is the Defendant's Motion for Summary Judgment and the Plaintiff's "Motion for Leave of Court to File Plaintiff's First Supplemental and Amending Complaint."

The Court hereby DENIES the Plaintiff's request to amend or supplement his Complaint and hereby GRANTS the Defendant's Motion for Summary Judgment in full.

## I. Background

Plaintiff, Mark E. Broussard, Jr., brings this suit alleging Oryx Energy Company ("Oryx") discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and under Sections 321–325 of the Louisiana discrimination statutes.[1] Specifically, Plaintiff claims in his Original Complaint that, in October 1994, Oryx failed to assign him to another position or otherwise accommodate his alleged disability. Defendant asserts that Plaintiff's allegation is barred by limitations.

Oryx Energy Company (which ceased to exist as a corporate entity in February 1999 due to a merger with Kerr–McGee Corp.) was engaged in the business of exploration and production of oil and gas. Broussard, was employed by Oryx at its Sabine Pass, Texas facility. He was hired on January 25, 1978 and worked for the majority of his time as a platform operator on offshore rigs. Plaintiff was ultimately terminated on March 31, 1998 because Oryx claimed he was unable to perform the essential function of his job as a platform operator and there were no other available jobs at Oryx for which he was qualified.

Elwood Clement Stevens, Jr., Morgan City, LA Joseph Warren Walker, Houston, TX, for plaintiff.

William John Bux, Locke, Liddell & Sapp, David M. Gregory, Locke, Liddell & Sapp, Houston, TX, for defendant.

1. This case was originally filed by Plaintiff in the United States District Court for the Western District of Louisiana but was transferred by consent to the Eastern District of Texas since all claims arose out of Plaintiff's employment in Sabine Pass, Texas. Judge Thad Heartfield received this case pursuant to General Order No. 00–8 after Judge Joe J. Fisher passed away on June 19, 2000.

Plaintiff actively worked as a platform operator for Oryx until July 12, 1994. His active employment ended due to a knee problem, and Plaintiff went on sick leave on July 19, 1994. Dr. G. Gregory Gidman performed surgery on Plaintiff's knee and wrote a diagnosis on August 15, 1994 which stated in part, "I do not feel that it is medically advisable for him to continue the type of work he is doing ... he really would be advised to try finding employment that requires mostly sitting and relieving as much stress as he can to the right knee. This recommendation would be on a permanent basis."

Plaintiff never returned to work after his surgery, but remained on medical leave until March 31, 1998. Oryx provided Broussard full sick pay benefits for six months, from July 19, 1994 to January 23, 1995. While receiving full-pay benefits, Plaintiff applied for long term disability benefits under Oryx's Long Term Disability Plan from CIGNA Group Insurance ("CIGNA") and began receiving these benefits on January 24, 1995, when his sick pay was exhausted.

From 1996 to 1998, Plaintiff attended a technical school and received a degree in network technologies where his studies involved the installation and repair of computer networks. Meanwhile, CIGNA continued to administer and pay Plaintiff's long term disability benefits and to pay Plaintiff's benefits until March 31, 1998. At that time, CIGNA notified Plaintiff that he was no longer eligible for long term disability benefits because CIGNA determined he was not disabled as required under the long term disability benefit plan due to his doctor's evaluation and Plaintiff's newly acquired computer skills.

Mr. Steve Church, Oryx's former Manager of Human Resources, looked for job openings for Plaintiff in Oryx's organization in April 1998, but there were no openings for which Plaintiff was qualified. Specifically, there were no openings in the Sabine Pass facility where Plaintiff had previously worked. Further, there were no computer jobs elsewhere at any other Oryx facility to utilize Plaintiff's newly acquired computer skills. As Mr. Church's undisputed deposition testimony shows, Oryx was eliminating its computer positions in 1997 and 1998 by outsourcing the work to vendors and laying off other Oryx employees who performed computer services. Thus, there was no computer work available at Oryx for Plaintiff to perform. Oryx notified Plaintiff of his termination, including termination of his long term disability pay, effective March 31, 1998.

Plaintiff ultimately, on November 24, 1998, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's Charge of Discrimination alleged that Oryx discriminated against him because he was not offered a purchasing agent/procurement operator position at Sabine Pass, Texas facility in 1994. He claimed that he should have been assigned to this position sometime between mid-August through mid-October 1994. It is undisputed, however, that in 1994 the procurement operator position was classified as a temporary position and was being performed by Mr. Phillip Cox and had been for some time.

Approximately three and one-half years later on January 18, 1998, the procurement operator position at the Sabine Pass, Texas facility became a permanent position. In his Charge of Discrimination, Plaintiff asserts that he should have been offered the procurement operator position at this time also. However, Mr. Cox was assigned the job on a permanent basis due to his approximately four years experience. Plaintiff admits that he had not discussed nor sought *any* other position from Oryx. Nor did he contact Oryx in any way since January 1995, the date he went on long-term disability. Based on these facts, the EEOC entered a finding of no cause and issued Plaintiff a Right to Sue Letter.

Plaintiff later asserted, for the first time at his deposition on April 19, 2000, that he

should have been given a safety coordinator/operator position at the Sabine Pass facility. He makes this allegation over three years from the time this position was filled in January 1997. Moreover, Plaintiff failed to make an allegation about the safety operator position in his EEOC charge and Original Complaint.

## II. Analysis

### A. Standard of Review for Motion for Summary Judgment

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine issue of fact. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support plaintiff's opposition to defendant's motion. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994); *Skotak v. Tenneco Resins Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.1992).

### B. Plaintiff's Response to Defendant's Motion for Summary Judgment

In *Texas Instruments, Inc. v. Hyundai Electronics Industries Co.*, this Court recognized that "[t]he nonmoving party does not overcome the absence of a genuine issue of material fact by simply 'creating some metaphysical doubt as to the material facts,' by making 'conclusory allegations,' by presenting 'unsubstantiated assertions,' or by proffering only a 'scintilla' of evidence." 42 F.Supp.2d 660, 669 (E.D.Tex.1999) (citations omitted). This Court also quoted various provisions of Local Rule CV–56 as follows:

- Local Rule CV–56(b) reads, in part: "Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a 'Statement of Genuine Issues.'"
- Local Rule CV–56(c) reads in part: "In resolving the motion for summary judgment, the Court *will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues'* filed in opposition to the motion, as supported by proper summary judgment evidence."

*Id.* at 670 (quoting Local Rule CV–56(b) & (c)) (emphasis added).

Plaintiff's Response to the Motion for Summary Judgment does not include a "Statement of Genuine Issues" in the text or as an appendix. His Response also makes multiple, new allegations based on new facts, which are not supported by his pleadings. Plaintiff's attempt to create fact issues by conclusory allegations and unsubstantiated assertions highlights the necessity for Local Rule CV–56. Because Plaintiff failed to include a "Statement of Genuine Issues" in the text of his Response or in an appendix (and in turn completely ignored Local Rule CV–56(b)), the Court is to assume that the facts pre-

535

sented by Oryx's Motion for Summary Judgment and supported by admissible evidence are admitted to exist without controversy. *Texas Instruments*, 42 F.Supp.2d at 670; Local Rule CV–56(c). Accordingly, Plaintiff produced no genuine issue of material fact to prevent the granting of Oryx's Motion, and therefore, the Court could grant Oryx's Motion for Summary Judgment on this basis alone.

Further, Plaintiff's motion fails to comply with Local Rule CV–56(b) because he does not "include *appropriate citations* to summary judgment evidence as to which it is contended that a genuine issue of material fact exists." Local Rule CV–56(b) (emphasis added). "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." Local Rule CV–56(d). In *Jacobs v. City of Port Neches*, this Court adopted Magistrate Judge Hines' opinion, which stated the opposing parties' burden to overcome summary judgment as:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. The court has no duty to sift through the entire record in search of evidence to support a party's opposition to summary judgment.[2]

*Jacobs v. City of Port Neches*, 7 F.Supp.2d 829, 830 (E.D.Tex.1998) (omitting citations), *aff'd*, 193 F.3d 516 (5th Cir.1999).

Plaintiff submitted with his Response to the Motion for Summary Judgment a total of *sixty-eight* exhibits. Yet the only identification of those exhibits in the Response was brief general summary provided on pages four and five. *See Plaintiff's Response to Defendant's Motion for Summary Judgment* at 4, 5. He also makes unsupported assertions and conclusory allegations without any or with very few *specific* citations.[3] Thus, the Court is presented with the situation of having to examine and guess what summary judgment evidence the Plaintiff relies upon and to determine if his factual assertions are supported. As in *Jacobs*, this Court refuses to search for evidence to support the Plaintiff's opposition to summary judgment.[4] *Jacobs*, 7 F.Supp.2d at 830.

This Court has grown weary of reminding counsel that they must comply with the

---

2. The Fifth Circuit and the Eastern District of Texas have continuously reiterated this point. *See e.g., Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 889 (E.D.Tex.1997) ("A court, however, is under no obligation to look beyond the materials to which the parties point to resolve a summary judgment motion.... A party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation.").

3. For example, Plaintiff labeled Exhibits A–1 through A–55 as "Affidavit of Mark E. Broussard, Jr." *See Plaintiff's Response to Defendant's Motion for Summary Judgment* at 4. These exhibits purportedly attempt to establish a chronology of events attesting to the continuing discrimination to which Plaintiff was subjected and the first notice he had that he had been wronged. However, although these fifty-five exhibits may give the impression of an abundance of evidence to support his cause, the Plaintiff never once makes a specific reference to *any* of these fifty-five exhibits in his entire Response to the Motion for Summary Judgment.

4. Plaintiff also filed with this Court *improper* summary judgment evidence. The transcript of recordings between his attorney, Mr. Stevens, and Mr. Cox indicates Mr. Stevens never informed Mr. Cox the conversations were being recorded. *See* Exhibit F–5 attached to Plaintiff's Response. Although Mr. Stevens is not licensed to practice in Texas, he is practicing before a Texas Federal District Court with local counsel, and he would be well advised to review Texas Disciplinary Rule 8.04(a)(3) and Texas Ethics Opinion 514 issued in 1996, indicating that "attorneys may not electronically record a conversation with another party without first informing that party that the conversation is being recorded." Thus, the Court strikes Plaintiff's Exhibit F–5 because it is the product of a violation of Texas Disciplinary Rule 8.04(a)(3) and improper summary judgment evidence.

Local Rules. Federal Rule of Civil Procedure 83(a)(1) permits the district courts to establish local rules. A valid local rule has the force of law. *Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148, 73 L.Ed. 243 (1929); *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir.1997). Litigants are presumed to have notice of the local rules the same as with knowledge of the Federal Rules and all federal law. *Jetton*, 121 F.3d at 426. Obtaining a copy of the local rules is simple enough. In the Eastern District of Texas, copies are mailed by the clerk's office, free of charge, to any party that requests them. The Local Rules for the Eastern District of Texas are also available on the District Court's website.[5]

This Court certainly agrees with the statement that "[parties] *must* become familiar with the local rules of the federal court in which [they] appear. Federal judges expect you to know these rules and to keep up with any changes." Hittner, Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL–5th CIR. ED. § 12:7 (The Rutter Group 1999) (emphasis in original). A party who appears in the Eastern District of Texas and fails to comply with the Local Rules does so at his own peril.

## C. American With Disabilities Act

The American with Disabilities Act ("ADA") provides that a plaintiff asserting claims against his employer for discrimination on the basis of a disability must follow the procedures required of a Title VII plaintiff, 42 U.S.C. § 2000e–5; 42 U.S.C. § 12117. Specifically, 42 U.S.C. § 2000e–5(e)(1) requires such a plaintiff to file an administrative charge of discrimination within one hundred and eighty days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e)(1).

However, where the unlawful practice occurred in a "deferral state,"[6] the time limit for filing a charge with the EEOC is 300 days. 29 U.S.C. § 626(d); *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 537 (5th Cir.1998) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *Griffin v. City of Dallas*, 26 F.3d 610 (5th Cir.1994). *See also Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998) ("In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of learning of the conduct alleged.").

The 300–day filing period is not jurisdictional, but rather is more akin to and operates as a limitations period. *Blumberg v. HCA Management Co.*, 848 F.2d 642, 644 (5th Cir.1988); *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir.1986). The Fifth Circuit has stated that "[i]f an EEOC charge is untimely filed, a suit based upon the untimely charge should be dismissed." *Barrow v. New Orleans Steamship Association*, 932 F.2d 473, 476–77 (5th Cir.1991); also *Ruffin v. American Airlines, Inc.*, 1999 WL 447064, at *3 (N.D.Tex. June 30, 1999) (granting summary judgment on discrimination claims because charges of discrimination were not timely filed).

A cause of action arises under the ADA when the employee receives unequivocal notice of the facts giving rise to his claim or when a reasonable, prudent person would know of the facts giving rise to a claim. *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir.1995). As the Supreme Court stated in *Delaware State College v. Ricks*, "[t]he proper focus is upon the time of the discriminatory acts,

---

5. *See* http://www.txed.uscourts.gov/.

6. A deferral state is one in which (1) a state law prohibiting age discrimination in employment is in effect and (2) a state authority has been set up to grant or seek relief from such discriminatory practice. 29 U.S.C. §§ 626(d) and 633(b). Texas is a so-called deferral state for Title VII purposes and hence, ADA purposes.

not upon the time at which the consequences become most painful." 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). "If a plaintiff knows or with the exercise of reasonable diligence would have known that [he] suffered from discrimination, [he] 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.'" *Lenihan v. The Boeing Company*, 994 F.Supp. 776, 788 (S.D.Tex.1998) (quoting *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993)). Therefore, "[a] knowing plaintiff has an obligation to file promptly or lose [her] claim." *See id.* at 788–89 (quoting *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 166 (1st Cir.1991)).

■ Plaintiff's Original Complaint only seeks redress for one, *and only one*, allegation of discriminatory conduct. The Plaintiff asserts that this discriminatory act occurred when Oryx allegedly failed to accommodate him by placing him in the procurement operator position on October 11, 1994. Specifically, he alleges:

> On or about October 11, 1994, defendant refused to assign to plaintiff, Mark E. Broussard, Jr. any further duties with the company and failed to make any accommodations for him because of his handicap, disability, or impairment or, alternatively, because of the defendant's perception of his handicap, disability, or impairment. Defendant discriminated against plaintiff and violated statutes named herein by not assigning plaintiff duties which he could perform and by not making any accommodations for him in plaintiff's desire to continue his employment.

*See Original Complaint ¶ 7.*

**7.** The Court notices that the Plaintiff did not file his Charge of Discrimination with the EEOC until he stopped receiving disability checks in the mail. This fact gives the impression to the Court that although the Plain-

Interestingly, Plaintiff does not dispute his knowledge of Oryx's decision not to offer him the procurement operator position on or about October 11, 1994. In fact, Plaintiff testified in his deposition, regarding the procurement job, as follows:

Q. And you knew you would not get that job[,procurement operator,] as of October 11th, 1994?

A. I know he did not offer me the job October 11th, 1994, correct.

Q. No doubt in your mind about that?

A. No doubt in my mind about it. Larry Bynum told me, you know, I would not get the job on October 11, 1994.

Q. And the job you are referring to is the procurement agent job that Mr. Cox was performing?

A. That is correct.

Since the Plaintiff was clearly aware he was not going to receive the position, and according to his Complaint, he felt he was discriminated against, he should have filed a Charge of Discrimination at that point. Instead, Plaintiff waited until November 24, 1998 (nearly four years later) to file his Charge of Discrimination with the EEOC. Therefore, Plaintiff's only claim of discrimination—not being placed in the procurement position on October 11, 1994—is barred by limitations.[7]

## D. Continuing Violations Doctrine

Plaintiff asserts in his Response to the Motion for Summary Judgment that his claim is not barred by limitations because of a legal theory entitled the "continuing violations doctrine." This doctrine is an equitable exception to the 300–day statute of limitations requirement explained above.

The Fifth Circuit has explained this doctrine as follows:

> tiff might have believed he was discriminated against in 1994, he didn't initiate a lawsuit against the Defendant until he needed an "alternate source of income."

The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.... The core idea of the continuing violations theory, however, is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period. Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.

*Huckabay v. Moore,* 142 F.3d 233, 238–39 (5th Cir.1998); *Eaglin v. Port Arthur Indep. Sch. Dist.,* 2000 WL 531801, at *5 (E.D.Tex., Mar.15, 2000).

■ The continuing violations doctrine allows the plaintiff to take the *alleged discriminatory act occurring within the 300-day period* and rely on or incorporate prior related acts falling outside the limitations period. Importantly, if the acts are not sufficiently related, then "the limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect

employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S. 250, 256–257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

The continuing violation exception is used "when the unlawful employment practice manifests itself over time, rather than a series of discrete acts." *Webb v. Cardiothoracic Surgery Assocs.,* 139 F.3d 532, 537 (5th Cir.1998). The Fifth Circuit has cautioned that "[t]his theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of the statutes of limitation in Title VII cases." *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir.1986). This logic also applies in ADA cases.

Plaintiff's Original Complaint indicates that the *sole* discriminatory act for which he seeks redress took place in October 1994. This allegedly occurred when Oryx did not offer Plaintiff the procurement operator position. *See Original Complaint* at ¶ 7. Although there is no definitive standard for what constitutes a "continuing violation," it would be a far stretch of the imagination for this Court to employ the continuing violations doctrine based on a Complaint that alleges *one* discriminatory act.[8]

### E. Alleged Violations of Title 23, Sections 321–325 of Louisiana Revised Statutes

■ Plaintiff also asserts violations of Sections 321–325 of the Louisiana discrimination statutes. LA.REV.STAT. § 321–325. To be covered by Sections 321–325 of the Louisiana revised statutes, there must have been an employment practice in Louisiana at the time of the alleged discriminatory conduct. *See* LA.REV.STAT. § 23:302.

---

**8.** It is true that the Plaintiff alleges more discriminatory acts (although generally and without citations to specific evidence) in his Response to the Motion for Summary Judgment. However, this does not change the result. Even the few additional alleged dis-

criminatory acts do not meet the standard necessary to invoke the continuing violations doctrine. *See Defendant's Reply to Plaintiff's Response to the Motion for Summary Judgment* at 5–10.

Section 302 of the Louisiana discrimination statutes states, "[t]he provisions of this Chapter shall apply only to an employer who employs twenty or more employees *within this State* [, Louisiana,] ...." *See id.* at (2) (emphasis added). Further, Section 302 defines an "employee" as "an individual employed by an employer." *See id.* at (1). Therefore, the plain language of the statute indicates that to be subject to Louisiana statutes regarding employment discrimination the employer must have been employing employees in Louisiana and the employee must have been employed in Louisiana at the time of the alleged discriminatory act. *See id* at (1), (2). It is undisputed that Plaintiff was employed by Oryx at its Sabine Pass, Texas facility. Therefore, Plaintiff's claims for any alleged violation of the Louisiana Revised Statutes fail as a matter of law as it arises in Texas, not Louisiana.

■ Even assuming the Louisiana disability discrimination statute applies, it mirrors the wording of the ADA. 42 U.S.C. § 12112; LA.REV.STAT. § 23.323. To interpret Louisiana's employment discrimination laws, Louisiana courts often look to federal court case law interpreting similar federal employment discrimination statutes. *See Morgan v. New Orleans Public Facility Management, Inc.*, 703 So.2d 182, 184 (La.App.1997); *Lapeyronnie v. Dimitri Eye Ctr., Inc.*, 693 So.2d 236 (La.App. 1997). Therefore, all the federal analysis applied in this Memorandum is equally applicable in interpreting sections 321–325. Accordingly, Plaintiff's state claim(s) fail for the same reasons.[9]

## F. Plaintiff's Motion to Amend Complaint

■ Plaintiff filed his Original Complaint on November 12, 1999, in the Western District of Louisiana. Since venue was not proper in the Western District of Louisiana, the case was transferred to the Eastern District of Texas on December 30, 1999. The parties received notice that the case was assigned to Judge Fisher on January 12, 2000.

Importantly, Judge Fisher entered his standing General Scheduling Order on January 12, 2000, which in part, *required all amended pleadings to be filed by the time of the Case Management Conference.* The Case Management Conference was later held with the parties and Judge Fisher on April 20, 2000. At this same Case Management Conference, the Court ordered the deadline for dispositive motions to be July 1, 2000, and set jury selection for August 21, 2000. Oryx then filed its Motion for Summary Judgment on June 30, 2000 based on the live pleadings— Plaintiff's Original Complaint.

Pursuant to Judge Fisher's Order, Plaintiff had until April 20, 2000 to file a motion to amend his pleadings. However, Plaintiff did not attempt to amend his pleadings prior to the Case Management Conference. Instead, Plaintiff waited until August 4, 2000, three and a half months later, shortly before the scheduled trial of this case, after Oryx's Motion for Summary judgment was on file, and after mediation had been attempted. Accordingly, Judge Fisher's Order mandates that Plaintiff's untimely motion be denied.

Although Judge Fisher's Order is basis enough to deny the Motion to Amend, Fifth Circuit precedent also supports the denial of Plaintiff's Motion since Plaintiff filed his Motion to Amend after Oryx filed its Motion for Summary Judgment.

After a responsive pleading, a party may amend his complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given *when justice so requires.*" FED. R. CIV. P. 15(a) (emphasis added). "Although Rule 15 'evinces a bias in favor of granting leave to amend,' it is not required." *In the*

---

9. It should be noted that Plaintiff makes no attempt whatsoever in his Response to the Motion for Summary Judgment to refute Defendant's argument that this Louisiana state claim should be dismissed.

*matter of Southmark Corp.,* 88 F.3d 311, 314 (5th Cir.1996) (quoting *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993)). "Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time." *Id.* at 314–15. When exercising the court's discretion to determine whether leave to amend one's pleadings should be granted or denied, the court may consider factors such as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice by virtue of the amendment, and futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *In the matter of Southmark Corp.,* 88 F.3d 311, 315–16 (5th Cir.1996); *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1150–51 (5th Cir.1990).

The Fifth Circuit has upheld a district court's denial of a motion to amend pleadings on numerous occasions *especially when the movant has delayed until after the non-movant has filed a dispositive motion for summary judgment. Southmark Corp.,* 88 F.3d at 316; *Overseas Inns,* 911 F.2d at 1151. In particular, in *Overseas Inns* the Fifth Circuit recognized:

> This case is unlike the usual one in which leave to amend is freely to be given. Extensive prelawsuit and pretrial proceedings have taken place. More importantly, the *government has already filed a summary judgment based on the current pleadings.* To grant [Plaintiff] leave to amend is potentially to undermine the [Defendant's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. The summary judgment procedure has built-in protections against premature judgment. *A party should not without adequate grounds, be permitted to avoid*

*summary judgment by the expedient of amending its complaint.*

*Id.* at 1151 (emphasis added).

The Fifth Circuit reiterated this holding by affirming the denial of an amendment to pleadings in *NL Industries, Inc. v. GHR Energy Corp.* and justified its decision by stating: "[movant] sought to amend its pleadings ... only after [non-movant] had requested summary judgment." 940 F.2d 957, 964 (5th Cir.1991).

Based on the live or current pleadings, Oryx filed its Motion for Summary Judgment. The Motion for Summary Judgment was prepared without reference to an unanticipated amended complaint. Since the proposed Amended Complaint: (1) was filed on the same day as the Response to Motion for Summary Judgment; and (2) attempts to "remedy" the weaknesses of the Original Complaint (as pointed out by the Defendant in the Motion for Summary Judgment), this Court believes that the Plaintiff's Motion for Leave to File Amended Complaint was filed *solely* in response to the Defendant's compelling summary judgment motion.[10]

In this case, like in *Overseas Inns,* by granting the Plaintiffs' motion for leave to amend, the Court would undermine the Defendant's "right to prevail on a motion that was necessarily prepared without reference to an unanticipated amended complaint." *Overseas Inns,* 911 F.2d at 1151. The Court therefore denies Plaintiff's "Motion for Leave of Court to File Plaintiff's First Supplemental and Amending Complaint."

### ORDER

IT IS THEREFORE ORDERED Plaintiff's Motion for Leave to File Amended or Supplemental Complaint is DENIED. IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED such that summary judgment is entered in favor of the Defendant. The

---

**10.** Had the amendment been allowed, the Court does not perceive that it would have changed its decision to grant the Motion for Summary Judgment.

above-styled and numbered cause is DISMISSED. Each side is to bear their respective costs. Motions pending with the Court, if any, are DENIED.