JERRY E. SMITH, Circuit Judge,
dissenting:
I respectfully dissent. Although this may be a fairly close question if examined de novo, by no stretch of the imagination did Chief Judge Fish abuse his discretion in granting comity to the decisions of the Mexican bankruptcy court.
The salient facts are these: In 1996, ITL had contemporaneous actual knowledge of Agral’s default and of the arbitration. In 1997, ITL had contemporaneous actual knowledge of the award, of Agral’s bankruptcy, and of Sharp’s proof of claim in the Mexican bankruptcy court. ITL chose not to reveal itself but instead to rely on Sharp as its collection agent. ITL knew of Sharp’s fraud no later than February 1999, when it joined the SEC’s enforcement action, and probably by November 1998, when the SEC first sued Sharp.
ITL had and declined three opportunities to protect its ownership of the award *597 in the Mexican bankruptcy court: (1) in February 1997, when it instructed Sharp to file its claim in that court; (2) in November 1998 or February 1999, when it joined the SEC’s enforcement action; and (3) in June 2001, when it sued Agral in Texas state court to enforce the award. When, in October 2001, GEN asked the Mexican bankruptcy court to confirm its ownership of the award, GEN likely knew that ITL also claimed ownership and that Sharp no longer acted as ITL’s agent.
The critical question on appeal is whether ITL had an opportunity to be heard in the Mexican bankruptcy court. Comity “is not a rule of law, but one of practice, convenience, and expediency.” Overseas Inns S.A P.A. v. United States, 911 F.2d 1146,1148 (5th Cir.1990). American federal courts should grant comity to a foreign court’s decision where the foreign court had jurisdiction and used civilized procedures, its judgment was supported by due allegations and proof, the parties had an opportunity to be heard, and a grant of comity would not prejudice American interests. Id. (quoting Hilton v. Guyot, 159 U.S. 113, 205-06, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). ITL does not seriously dispute any element other than its opportunity to be heard.[1]
ITL and Agral further reduce this dispute to when and on what ITL had an opportunity to be heard. ITL admits that it had multiple opportunities to be heard over the course of the Agral bankruptcy proceedings, but not on GEN’s specific motion to confirm ownership of the award. Agral admits that ITL was not heard on GEN’s motion, but disagrees that this fact matters on the issue of comity. Thus, the key issue is whether ITL had a right to be heard specifically on GEN’s motion or just generally in the bankruptcy proceedings.[2]
There is essentially no law from the Fifth Circuit or other courts of appeals on this obscure question. We therefore must apply a fairly abstract standard — an opportunity to be heard — without much guidance from precedent. We should revert, however, to the purposes behind the Hilton test and specifically its opportunity-to-be-heard element. The test encourages respect for foreign courts (in hope of reciprocal respect), discourages protracted re-litigation of the same dispute, and ensures procedural fairness for the aggrieved party.[3]
With these purposes in mind, we should affirm the grant of comity — and certainly should do so on the ground that the district court did not abuse its discretion. American courts often note the importance of extending comity to foreign bankruptcy courts, given the nature of insolvency pro *598 ceedings.[4] Further, ITL (through Sharp or on its own behalf) and Agral have struggled over the note and then the award for seven years before an arbitrator, American courts, and Mexican courts.
Finally, the grant of comity is not procedurally unfair to ITL. To be sure, ITL was not heard on GEN’s motion. Yet, we should conclude, as did the district court, thát this fact did not inflict a great injustice on ITL. In a sense, ITL was heard on the decisive question of its ownership of the award when the Mexican bankruptcy court denied Sharp’s claim in January 1999.[5] Although the Mexican bankruptcy court dismissed Sharp’s claim based on the 1998 assignments, it probably would have done the same based on the January 1999 decision as well.[6]
Moreover, ITL easily could have intervened in the Mexican bankruptcy proceedings at any time. Instead, it instructed Sharp to file the claim in February 1997, it sought to recover the award from Sharp in February 1999 in federal district court, and it sued Agral to enforce the award in June 2001 in Texas state court. In fact, after ITL sued Agral in June 2001, Agral repeatedly encouraged ITL to join the Mexican bankruptcy proceedings. ITL, after years of indolence and neglect, can hardly cry injustice now.
Nor does the fraud of Sharp excuse ITL. Although ITL reasonably might have relied on Sharp in February 1997, it certainly knew of Sharp’s malefactions by November 1998 or February 1999, in plenty of time to protect its interests in the Mexican bankruptcy court.
In sum, the district court reasonably concluded that the Hilton test requires only an opportunity for ITL to be heard generally in the bankruptcy proceedings, not specifically on GEN’s motion. Thus, the district court did not abuse its discretion by granting comity to the Mexican bankruptcy court’s decision that ITL did not own the award or by therefore finding that a favorable decision would not redress ITL’s injury.

.ITL asserts that GEN did not offer sufficient proof to support the Mexican bankruptcy court’s decision, but the court based its decision on an uncontradicted affidavit. ITL also criticizes the procedures of the Mexican bankruptcy court. Insofar as ITL criticizes Mexican justice in general, American courts disagree. See, e.g., Vasquez v. Bridge-stone/Firestone, Inc., 325 F.3d 665, 671-72 (5th Cir.2003); Gonzalez v. Chrysler Corp., 301 F.3d 377, 383 (5th Cir.2002); In re Blackwell, 267 B.R. 741, 758-59 (Bankr.W.D.Tex.2001). Insofar as ITL criticizes the Mexican bankruptcy court’s use of procedures in this particular case, that criticism relates to ITL’s opportunity to be heard, not to the fairness of Mexico’s procedural rules in general.

. To summarize, whether ITL has standing depends on whether the district court properly granted comity to the Mexican bankruptcy court, which in turn depends on whether ITL had an opportunity to be heard, which ultimately depends on whether ITL has a right to be heard specifically on GEN's motion or just generally in the bankruptcy proceedings.

. Finanz AG Zurich v. Banco Económico, S.A., 192 F.3d 240, 246 (2d Cir.1999); Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 442-43 (3d Cir.1971).

. Allstate Life Ins. Co. v. Linter Group, Ltd.., 994 F.2d 996, 999 (2d Cir.1993); Overseas Inns, 911 F.2d at 1149.

. Even if Sharp had betrayed ITL by January 1999, ITL instructed Sharp to file a claim on behalf of ITL in February 1997, before any allegation was made against Sharp.

. Cf. Banca Agricola Mantovana v. Farinacci (In re Enercons Va., Inc.), 812 F.2d 1469, 1472-73 (4th Cir.1987) (affirming grant of comity to foreign bankruptcy court's earlier order notwithstanding a later at parte order to similar effect).